Kenneth E. Smith, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 15, 1982, to President Judge CRUMLISH, JR. and Judges BLATT and DOYLE, sitting as a panel of three.

*Robert E. Benion,* for petitioner.

*Charles G. Hasson,* Assistant Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 21, 1982:

Kenneth E. Smith here appeals from the denial of his claim for unemployment compensation benefits. The Unemployment Compensation Board of Review, affirming a referee, found that the claimant had been discharged from his position as an upholstery trimmer with Pennsylvania House, a division of General Mills Corporation engaged in the manufacture of furniture, on account of his disqualifying willful mis-

conduct within the meaning of Section 402(e) of the Unemployment Compensation Law,[1] 43 P.S. §802(e).

The specific offense charged by the employer and found by the Board to have substantial evidentiary support was that the claimant falsified certain records essential to the computation of his wages. The findings of the Board on this issue are as follows:

2. Plant Rule No. 22 states that an employee will be automatically discharged for falsification of work records.

3. The claimant was aware of this rule.

4. On March 4, 1981, the claimant was completing some repair work on a sofa.

5. An employee does not get an average rate to close a job but is only given an average rate back to the point the job is started.

6. The claimant completed his timecard to reflect the average rate on the entire job and additionally took his ticket time.

The question before us, then, is whether these findings, and especially finding number six set forth above, which the claimant contests, are supported by substantial evidence of record and are adequate to resolve the factual issues raised by the parties.

At the outset we must submit that the expressions "average rate," "close a job" and "ticket time," employed by the Board in its findings, are not, in our experience, terms so commonly and universally understood as to permit their unelucidated usage in this context. Neither is the testimonial or documentary evidence of record of much assistance on this score. The best description of the claimant's conduct assertedly constituting willful misconduct is the following:

---

[1] The Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-914.

Referee: Tell me what happened.

Supervisor: O.K. Two jobs came through our upholstering floor. . . .

Referee: When did this happen?

Supervisor: I don't know the exact date. That we kicked them out.

Referee: Kicked them out?

Supervisor: They had flaws in.

Referee: Let's stop right now. I don't understand the terminology, you fellows do, so be a little considerate of me, I don't know what kicked out means, I thought it had something to do with your feet.

Supervisor: O.K. Two jobs came up, the first one, it was a pair of love seats manufactured for one dealer. The first one, when Mr. Snyder upholstered it he found a lot of flaws in it, wouldn't meet our specifications to be sent, so parts had to be recut and new material put on. So, when we seen him start the second one we kicked it out, said the first one had flaws in so the second one probably will too because it's out of the same lot of fabric so obviously there would be flaws in the second one so they were sent to the repair area.

Referee: What?

Supervisor: We have a repairman and he will tear it down and get whatever parts are necessary to put new material on and go back to be reclosed into this area. The first job was completely finished. All right. It was partially tacked and stopped and sent over and when the two jobs came back, the first one was closed up at the average rate, which is O.K., the job had already been finished.

Referee: Wait a minute. It was given back to Mr. Smith?

Supervisor: To be closed up.

Referee: And he was paid for that on an average earning rate?

Supervisor: Right.

Referee: Because you had rejected it after he had completed it?

Supervisor: Right. The second one came back to be closed up and what happened, Mr. Smith turned in the ticket, the job was done, closed up, plus the variable, the extra time, but he also closed the job up at the average rate and took the average rate to close it up although it wasn't trimmed or lined, finished, just barely started.

Referee: The difference between the two is the first one he had completed and you rejected it and sent it back, the second one he had just, quote, barely started to put the arm on and you stopped him and sent it to the repairman and when that came back, he worked on number one, and was paid on the basis of his average hourly rate because he had already done that job. On the second one he also claimed his average hourly rate plus variables. . . .

Supervisor: And turned in the normal ticket time for it.

Referee: Why wouldn't he do that?

Supervisor: Because our procedure is you only get average rate to the point that the job was at. Find an arm flaw and you have it barely put on, get a new arm, it would be back to that point and you go back to the regular ticket time, you don't get average rate to close

the whole job, only average rate back to the point it was started.

Referee: Get average rate, he had the arm on.

Supervisor: He would get average rate to that point and go back to the normal ticket time and do your job.

Referee: And he didn't do that?

Supervisor: No.

Referee: He took average on the whole thing?

Supervisor: Right, plus his ticket time besides. Took both, in other words.

The documentary evidence submitted by the employer in the form of exhibits is, if it is possible, even less helpful; consisting of barely legible photostatic reproductions of typewritten and typeset originals in combination with handwritten marginal notation, one of which appears as follows:

|  |  |  |  | [Handwritten] |
|---|---|---|---|---|
| | 197043 [*] | | 3/18/81 | .9 |
| | OPERATIONS [**] AD52855-05 | | RATE | .5 |
| U27 | 17-7130 | .0 | .5 | |
| | 7-22127 | 60.7 | 2.0 match | |

\* All numbers are apparently typewritten on the original.

\*\* The words "operations" and "rate" are apparently typeset on the original.

Sixteen additional reproduced documents, of identical import to the uninitiated, are also provided.[2]

_____

2 Adding to the confusion is the colloquy of the employer's witness and the referee at the point in the hearing when these exhibits were marked and admitted into evidence. The witness states that he will circle the two pertinent "tickets" with a green marker. Only one ticket is so circled in the record certified to this Court, an inconsistency which was apparently also troubling to the referee who stated "I only see one ticket." The employer's response is a model of explanatory clarity: "The other one is on the other one."

414

We have examined all of this evidence with great care and, although the product of these efforts is something less than complete understanding, we are convinced that the evidentiary dispute in this case can be resolved only by findings as to whether the claimant, as he asserts, exhausted thirty-nine minutes[3] in applying upholstery to one arm of a certain sofa on March 3, 1981.

Specifically, and readily conceding that our theory of the case is, in the absence of any real assistance from the fact-finder, just a theory, we believe that in late February, 1981, the claimant performed his upholstery trimming operation with respect to the two sofas; that with respect to the first of these sofas he completed his work while with respect to the second he completed only a small portion when both pieces of furniture were taken off the production line and transported to a "repair shop" for the repair of defects unrelated to the claimant's work; that the sofas were returned to the claimant on March 3, 1981, where he was required to repeat the operations previously performed with respect to these articles; that the claimant represented on forms provided by the employer that he had expended forty-three minutes repeating operations previously performed on the first sofa and thirty-nine minutes repeating operations previously performed on the second sofa; that the claimant was also entitled to be paid, in addition to his hourly rate of pay multiplied by the time intervals

---

[3] Even the amount of time at issue is subject to some doubt. The relevant evidence is as follows:

Q: His repair time on the second couch was not as great as the repair time on the first couch, is that correct?

A: [Employer's witness]: I don't know what he [the claimant] wrote down. I would have to look at it. One was thirty-nine minutes and I don't know the one the day before was. One-fifty-seven and two-forty, which is forty-three minutes, on that.

just recited, forty-five minutes times that or some other hourly rate for each of the sofas; that the employer's witnesses found it incredible that the claimant could expend thirty-nine minutes repeating the operations performed on the second sofa before it was repaired inasmuch as only a small portion of the work had then been accomplished; that the employer's witnesses proposed instead that the claimant had falsely claimed to have expended thirty-nine minutes when the work had been accomplished in some shorter period of time; and that the claimant's testimony is that he, in fact, expended thirty-nine minutes on the job, a length of time he concedes is excessive, because he was "goofing off" and engaging in conversations with co-workers on account of a general lack of work to be done at the plant that day.

It is conceded by the employer that, if the claimant was, as he testified, "goofing off" then, as this would have been the claimant's first such offense in nineteen years of employment with Pennsylvania House, he would not have been subject to discharge under the terms of the applicable collective bargaining agreement.

As we have indicated, only the Board's conclusory finding number six, without accompanying discussion, addresses this issue of fact and that finding does not resolve the crucial dispute of fact (or mention it) of whether the claimant spent thirty-nine minutes on repair of the arm as he says or less and, if less, whether the discrepancy was so material as to demonstrate that the claimant was cheating. We note further that our examination of the record discloses no evidence, apart from the claimant's testimony described above, probative on the issue of the claimant's actual activities during the critical thirty-nine minute period.

Order reversed; record remanded.

416

The order of the Unemployment Compensation Board of Review, Decision No. B-197167 dated July 13, 1981, is reversed and the record is remanded for further proceedings consistent with this opinion.